IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2022 JAN 11  A 10: 35

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| Natasha Jones, Jonessa Jones, and JaKaya Sanders individually and on behalf of all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>ASK Telemarketing, Inc., an Alabama Corporation,<br><br>Defendant. | PLAINTIFFS COLLECTIVE ACTION COMPLAINT<br><br>Case No.: 2:22-cv-20<br><br>Demand for Jury Trial |

## **COMPLAINT – COLLECTIVE ACTION**

Plaintiffs Natasha Jones, Jonessa Jones, and JaKaya Sanders ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby brings this Collective Action Complaint against Defendant ASK Telemarketing, Inc. ("Defendant"), and states as follows:

## **INTRODUCTION**

1.    This is a collective action brought pursuant to 29 U.S.C. § 216(b) by Plaintiffs, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

2.    Defendant operates a call center, in the State of Alabama, where they employed hourly Customer Service Agents ("Agents").  Defendant failed to provide these employees their full compensation, over the past three years, by failing to pay their employees for the preliminary work completed before their shift, forcing employees to work during their unpaid meal periods, and systematically denying their employees overtime compensation.

1

3.      Accordingly, Plaintiffs seek an award of unpaid overtime wages, liquidated and statutory damages, and an award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq.*

5.      This Court has personal jurisdiction over Defendants because Defendant's headquarters are in this district and Defendant resides in this district.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant resides in this district, and a substantial portion of the decisions and policy-making that give rise to the Plaintiffs' claims occurred in this district.

## PARTIES

7.      Plaintiff Natasha Jones, at all times relevant, was a resident of Alabama and was employed by Defendant as an hourly Agent for Defendant.  She has been employed as a customer service representatives by Defendant from 2015 to 2020.  Plaintiff Jones signed a consent form to join this lawsuit, which is attached hereto as ***Exhibit A***.

8.      Plaintiff Jonessa Jones, at all times relevant, was a resident of Alabama and was employed by Defendant as an hourly Agent for Defendant.  She has been employed as a customer service representatives by Defendant from 2020 to 2021.  Plaintiff Jones signed a consent form to join this lawsuit, which is attached hereto as ***Exhibit B***.

9.      Plaintiff JaKaya Sanders, at all times relevant, was a resident of Alabama and was employed by Defendant as an hourly Agent for Defendant.  She has been employed as a customer

2

service representatives by Defendant from 2015 to 2019. Plaintiff Sanders signed a consent form to join this lawsuit, which is attached hereto as *Exhibit C*.

10.     Defendant ASK Telemarketing, Inc. is an Alabama Corporation, headquartered in Montgomery, Alabama. Defendant's principal mailing address is 5665 Carmichael Road, Montgomery, AL, 36117.

## GENERAL ALLEGATIONS

11.     Defendant is an Alabama based customer-relationship management company which provides call center support for various companies across the country. Defendant operates a call center in Montgomery, Alabama. Defendants also employ work-for-home Agents. Defendant employ more than 600 employees in the United States.

12.     Defendant would pay their Agent on an hourly basis, but would also provide increases to this hourly rate if the Agent as a performance based bonus.

### Pre-Shift Off-the-Clock Work

13.     In order to service their customers, Defendant employs hourly Customer Service Agents, and similar positions, at its call center in Montgomery, Alabama and remotely, across the country. These Agents all perform essentially the same tasks, regardless of whether they work in a call center or if they work from home. Regardless of where they work, Agents follow the same company wide policies and employment practices utilized by the entire company.

14.     Defendant employed each of the Plaintiffs, and other Agents, during the past three (3) years.

15.     Defendant requires their Agents to work a set, full-time schedule. However, Defendant did not begin compensating customer service representatives until they have started up their computers and logged into all of the necessary computer applications and was ready for their

first call. This policy results in Agents not being paid for all time worked and for all of their overtime compensation in violation of the FLSA.

16.     Defendant's Agents use multiple computer programs, software programs, servers, and applications in the course of performing their responsibilities at the call centers. These programs, servers, and applications are an integral and important part of their work as they cannot perform their job without them.

17.     At the beginning of their shift, Defendant's Agents are required to login to several programs, such as a VPN, the client management software, logistics programs, and others before they could log into their time keeping system. The Agents engage in fifteen (15) to thirty (30) minutes of pre-shift off-the-clock work booting up their computers and logging into Defendant's time keeping system. This process can often take even longer, particularly, if the Agents experience technical difficulties with the computer systems, which would happen as often as once a week and could delay the clock-in process.

18.     Defendant's Agents were required to waiting during this login process, and could not use this time for their own purposes. Even when there are technical difficulties with the computer systems, which lasted over an hour, Defendant's Agents were not completely relieved from duty, and were expected to stay on premise or near their computer, so they could begin their calls immediately after the technical difficulties was resolved.

19.     Defendant's Agents were expected to be prepared to take calls at the beginning of their scheduled shift. Accordingly, Defendant's Agents often had to arrive/be ready fifteen minutes early to complete the login process and above disciplinary action. But Defendant did not compensate their Agents for this time, despite their employees being force to be on premise and/or preparing to work during this time.

20. Defendant's Agents would attempt to submit request for compensation for this pre-shift work, but their requests were regularly denied. Defendant drafted and were aware of these policies and purposely required their Agents engage in preliminary compensable work before clocking into their time-keeping system. Such actions were done knowingly and purposefully to limit staffing budgets and increase their profits.

21. Defendant's Agents working onsite at the call center and from home perform the same basic job duties and are required to use the same computer programs, software programs, servers, and applications. Accordingly, all of Defendant's Agents are equally aggrieved by Defendant's uniform policy of failure to pay its employees for preliminary time worked.

### Improperly Paid Over Time Work

22. Defendant also required that their Agents work overtime, often five (5) hours or more of overtime per workweek. These additional work requirements caused Defendants' Agents work in excess of forty (40) hours in a given workweek.

23. For example, to reduce overtime hours, Defendant would often edit their employees time records to remove any unscheduled overtime hours. Defendant's time clock system was designed to prevent Agents from clocking out before they had finished their assigned work calls for the day. However, if they had too many calls, or it Agent's last call went for too long, Defendant would unilaterally amend the Agent's time records to show that the Agent ended their shifted at the schedule time.

24. Defendant sometimes would not compensate employees for this time at all, but if they were compensated, it was not at the legally required premium rate. Under federal law, Defendant must pay overtime pay for hours worked over 40 in a workweek at a rate not less than time and one-half times their employees' regular rates of pay.

25.    Defendant was aware of their deficient compensation practices.  Indeed, Agents would often complain to Defendant's representatives regarding the lack of overtime premium pay. These inquires and complaints were heard by Defendant's representatives, but no corrective action was taken.  Accordingly, Defendant knowingly and purposefully underpaid their Agents for their own benefit, and at the costs of their employees' wages.

### Mid-Shift (Lunch) Off-the-Clock Work

26.    Defendant provided and authorized their Agents to take a one-half hour unpaid lunch during the standard eight (8) shifts.  While a *bona fide* meal period is not worktime, which must be compensated, an employee must be completely relieved from duty for the purposes of eating regular meals.  An employee is not relieved if he or she is required to perform any duties, whether active or inactive, while eating.  For example, an office employee who is required to eat at his or her desk or a factory worker who is required to be at his or her machine is working while eating.

27.    During Agents' unpaid lunch periods, Defendant would interrupt these meal periods with additional work, without compensating their Agents.  For example, Defendant often required that their Agents use these meal periods to work on their required call documentation or take additional calls if they were busy.

28.    Defendant's Agents would also have their unpaid meal period encroached by the required computer login process referenced above.  Accordingly, Defendant's Agents were not fully compensated for their time worked during their unpaid meal periods, and did not receive the benefit of their meal periods.

### COLLECTIVE ACTION ALLEGATIONS

29.    Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own

6

behalf and on behalf of:

> *All similarly situated current and former hourly customer service*
> *representatives who worked for Defendant at home in the United State or*
> *in Defendant's Alabama call center, at any time during the last three years.*

(hereinafter referred to as the "putative collective members"). Plaintiffs reserve the right to amend this definition as necessary.

30.     Plaintiffs' FLSA claim should proceed as a collective action because Plaintiffs and putative collective members, having worked pursuant to common compensation policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

31.     Plaintiffs and putative collective members are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same unlawful practice, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

32.     The key legal issues are also the same for putative collective members, to wit: whether the off-the-clock time they spend in connection with performing pre-shift and lunch break activities is compensable under the FLSA. Also, whether Defendant failed to pay the proper overtime premiums and pay the appropriate wages during rest periods.

33.     Plaintiffs estimate that the putative collective members, including both current and former employees over the relevant period, will include several thousand members. The precise number of putative collective members should be readily available from a review of Defendants' personnel and payroll records.

**COUNT I**
**(Alleging Violations of the Fair Labor Standards Act,**
**29 U.S.C. § 201, *et seq.*)**

34.    Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

35.    At all times relevant to this action, Defendant was Plaintiffs' employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

36.    Defendant engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

37.    At all times relevant to this action, Plaintiffs were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

38.    Plaintiffs either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

39.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

40.    At all times relevant to this action, Defendant required Plaintiffs and all similarly situated current and former employees to perform pre-shift start-up/log-in activities per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

41.    At all times relevant to this action, Defendant failed to compensate Plaintiffs and all similarly situated current and former Class members overtime premium pay for hours worked in excess of forty (40) hours in a week.

42.    At all times relevant to this action, Defendant failed to compensate Plaintiffs and all similarly situated current and former employees for work activities they performed during their

lunch breaks.

43.    At all times relevant to this action, Defendant failed to compensate Plaintiffs and all similarly situated current and former employees for all hours worked after their scheduled shifts.

44.    The off-the-clock work performed by Plaintiffs and all similarly situated current and former employees every shift is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

45.    In workweeks where Plaintiffs and other similarly situated current and former employees members worked 40 hours or more, the uncompensated off-the-clock time should have been paid at the federally mandated rate of 150% of each employee's regularly hourly wage. *See* 29 U.S.C. § 207.

46.    Defendant failed to properly calculate the regular hourly rate for Plaintiffs and other Class members by not including non-discretionary bonuses and commissions in the calculation of their overtime rates.

47.    Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for their Agents to perform the off-the-clock pre-shift and lunch break activities, and Defendant could have properly compensated Plaintiffs and the similarly situated current and former employees for the work they performed, but did not.

48.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs request the following relief:

a.    An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA putative collective members and Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

c.    An Order designating Plaintiffs as the representatives of the FLSA collective, the Rule 23 Arizona Class, and undersigned counsel as Class counsel for the same;

d.    An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

e.    An Order declaring Defendant's violation of the FLSA was willful;

f.    A Judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the FLSA Collective the full amount of damages and liquidated damages available by law;

g.    An award of reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

h.    An award of pre- and post-judgment interest to Plaintiffs on these damages; and

i.    An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs demand a jury trial.

**ERIC SHEFFER**
**WIGGINS, CHILDS, PANTAZIS,**
**FISHER & GOLDFARB, LLC**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500

Facsimile:  (205) 254-1500
E-mail: esheffer@wigginschilds.com

Trenton R. Kashima, Esq. (Pro hac vice pending)
**SOMMERS SCHWARTZ, P.C.**
402 West Broadway, Suite 1760
San Diego, California 92101
Ph: (619) 762-2125
tkashima@sommerspc.com

Kevin J. Stoops, Esq. (Pro hac vice pending)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Ph: (248) 355-0300
kstoops@sommerspc.com

*Counsel for Plaintiffs*