IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| NATASHA JONES, et al., | ) | |
| individually and on | ) | |
| behalf of all other | ) | |
| similarly situated | ) | |
| individuals, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
|     v. | ) | 2:22cv20-MHT |
| | ) | (WO) |
| ASK TELEMARKETING, INC., | ) | |
| an Alabama Corporation, | ) | |
| | ) | |
|     Defendant. | ) | |

OPINION AND ORDER

Plaintiffs Natasha Jones and Jonessa Jones bring this action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, on behalf of themselves and others similarly situated, contending that their former employer, defendant ASK Telemarketing, Inc., willfully withheld compensation for pre-shift, mid-shift, and overtime work.  Jurisdiction is proper under 28 U.S.C. §-1331 (federal question) and 29 U.S.C. § 216(b)(FLSA).

The case is now before the court on the Joneses' motion for conditional class certification.  For the reasons that follow, the motion will be granted.

## I. BACKGROUND

The Joneses are former employees of ASK, which provides customer communication services to corporate clients nationwide.  ASK's employees, otherwise known as "agents," are hourly, non-exempt FLSA employees whose job responsibilities consist largely of responding to customers' inbound requests and inquiries over phone, email, and social media, among other platforms.  Between its call center in Montgomery, Alabama, and its remote workforce, ASK employs around 600 agents across the country.  The Joneses have both worked in the Montgomery Center and as remote agents.

ASK evaluates its agents' performance using attendance and quality-adherence metrics.  As relevant here, agents must maintain an attendance rate of either

2

96 % or 97 %, depending on their specific job titles, to remain in good standing.  Agents whose rates of absenteeism exceed 3 % or 4 % may face disciplinary action.  Beginning work after the start of a scheduled shift can contribute toward an agent's record of absenteeism.  ASK considers agents to have clocked in to work as soon as they are "phone ready," which means that they have logged into all of the computer programs necessary to field and document customer calls.  Agents are expected to be phone ready at the start of their scheduled shifts, which is also the point at which their time on the job counts toward their hourly compensation.

The crux of the Joneses' complaint is that ASK trained or instructed agents not to clock into work until they were phone ready, resulting in compensation shortages for pre-shift, mid-shift, and overtime work. The Joneses argue that ASK's attendance policy forced agents to begin booting up their computers and getting phone ready ahead of their scheduled shifts, lest they

3

risk being marked as late to work and potentially facing disciplinary action.   Due to the suite of computer programs agents must have ready before accepting customer calls, the Joneses describe the log-in process as taking anywhere between seven and 30 minutes, with technical difficulties often creating additional delays.   According to the Joneses, because agents were not considered to be on the clock until they were phone ready, ASK routinely denied requests to have their pre-shift work compensated. Nor, on the Joneses' telling, did agents receive payment for the time they spent waiting for technical difficulties to be resolved.

The Joneses further allege that the process of getting phone ready encroached on their mid-shift meal breaks.   All ASK employees who work a full shift must take an unpaid meal break of between 30 and 60 minutes. The Joneses report that agents had to carve anywhere between three and 15 minutes out of their daily breaks so they could be phone ready in time to resume their work

as scheduled, often resulting in breaks that were shorter than 20 minutes.  They also claim that ASK pressured agents into taking or documenting calls during their unpaid breaks.  Again, ASK allegedly did not compensate its agents for this mid-shift work.

Finally, because they regularly worked 40-hour weeks, the Joneses contend that their pre-shift work should have been compensated under the FLSA's overtime rate.  The FLSA requires that employees who work over 40 hours a week receive one and a half times their regular pay for all excess hours.  *See* 29 U.S.C. § 207.[1]  The Joneses insist that ASK failed to compensate agents adequately for overtime work, either by neglecting to pay them the full amount due under the FLSA or retroactively modifying agents' timesheets to show that they clocked out at the end of their scheduled shifts, effectively withholding compensation altogether.

---

1. ASK does not dispute that the FLSA governs its payment of the Joneses and other non-exempt employees.

Bernadette Dickerson and Nicole Lake, who seek to "opt into" this case, state that, like the Joneses, they did not receive compensation from ASK for the work they did before their shifts or during their meal breaks to be phone ready as their schedules prescribed. Dickerson and Lake both claim that, because they worked 40-hour shifts, the time it took them outside their scheduled shifts to be phone ready was uncompensated overtime work. Dickerson further alleges that ASK retroactively modified her and other agents' timesheets to avoid having to compensate them for overtime work.

## II. DISCUSSION

The FLSA authorizes workers seeking unpaid compensation to bring a collective action on behalf of themselves and "similarly situated" workers.  29 U.S.C. § 216(b); *see also Garner v. G.D. Searle Pharms. & Co.*, 802 F. Supp. 418, 420 (M.D. Ala. 1991) (Thompson, C.J.). Unlike traditional class actions for damages under Rule

6

23 of the Federal Rules of Civil Procedure, which bind all members of the class who do not "opt out" of the litigation,[2] the FLSA § 216(b) collective action allows potential class members to "opt in," and workers are bound by the lawsuit's result only if they affirmatively decide to participate by submitting written consents to the court. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001).

"Because similarly situated employees must affirmatively opt into the litigation, the decision to certify the action, on its own, does not create a class of plaintiffs. Rather, the 'existence of a collective action under § 216(b) ... depend[s] on the active participation of other plaintiffs.'" *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008) (alterations in original) (quoting *Cameron-Grant v. Maxim*

---

2. *See, e.g.*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) ("[T]he judgment [in a class action], whether favorable or not, will bind all class members [who did] not request[] [to be] exclu[ded].").

*Healthcare Servs. Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003)).  Conditional certification of a putative class is important because it allows for court-authorized notice to alert potential opt-in class members of the suit's existence.  *See id.* (citing *Hipp*, 252 F.3d at 1218).  Once others opt in, the case can move forward through discovery as a collective action on behalf of the original and opt-in plaintiffs.  *See id.*

The Eleventh Circuit Court of Appeals thus recommends a two-step process for certifying FLSA collective actions under § 216(b).  *See id.* at 1260.  At the first stage, courts consider conditional certification of the class of workers for notice purposes; this stage is alternately called the "conditional certification stage" or "notice stage."  *Id.* at 1260-61.  At this initial stage, "the district court should satisfy itself that there are other employees of the department-employer who desire to 'opt-in' and who are 'similarly situated.'"  *Dybach v. State of Fla. Dept. of Corr.*, 942 F.2d 1562, 1567-68

8

(11th Cir. 1991).   Certification at this stage is considered "conditional" because courts leave open the possibility for decertification of the class when more information about the original and opt-in plaintiffs is available.  *Morgan*, 551 F.3d at 1261.

The second stage of the recommended two-step approach is "triggered" by a motion for decertification of the class.  *Id.*  "At this point, the district court has a much thicker record than it had at the notice stage, and can therefore make a more informed factual determination of similarity."  *Id.*

In this case, the litigation is at the conditional certification, or notice, stage.  Because discovery has not yet begun and the record is still undeveloped, the standard for finding similarity is "fairly lenient," *id.* (quoting *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 488 (11th Cir. 2007); the standard here has also been described as "flexib[le]," *id.* (quoting *Hipp*, 252 F.3d at 1219), "not heavy," *id.* (quoting *Grayson v. K Mart*

9

*Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996)), and "elastic and less stringent than that for joinder under [Federal Rule of Civil Procedure] 20(a) or for separate trials under [Rule] 42(b)," *id.* (quoting *Grayson*, 79 F.3d at 1097). Still, the original plaintiffs must provide a "reasonable basis" for the court to find other similarly situated workers exist and would opt in if they knew of the suit. *Id.* at 1260. This burden may be met with "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Anderson*, 488 F.3d at 952 (quoting *Grayson*, 79 F.3d at 1097). Mere assertions from counsel that illegal activity is widespread and that other employees will join the action upon notice are, without more, insufficient. *Morgan*, 551 F.3d at 1261 (citing *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983)).

The Joneses thus bear the burden at this preliminary stage to show a reasonable basis for finding, first, that they and the potential opt-in plaintiffs are similarly

10

situated and, second, that other ASK agents desire to opt into their suit.

### A. <u>Similarly Situated Requirement</u>

Neither the FLSA nor case law provides a clear definition of "similarly situated," *Morgan*, 551 F.3d at 1260; instead, courts have recognized that the relevant factors for determining whether other employees are similarly situated vary depending on the type of violation alleged. *See, e.g.*, *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 364 (M.D. Ala. 1999) (Albritton, C.J.) (discussing *Dybach*, 942 F.2d 1562, and noting that the "determinative factor" for evaluating whether the *Dybach* employees were similarly situated depended on a "distinct factual scenario").

The Eleventh Circuit Court of Appeals has interpreted the "similarly situated" requirement under § 216(b) as "elastic" and "liberal" when the employees in the plaintiff class do not fall within the FLSA's exemptions.

*See Grayson*, 79 F.3d at 1095.  By contrast, the "similarly situated" standard is more exacting when the defendant contends that its employees are exempt from the FLSA as professional or managerial employees.  Thus, in *Dybach* and *Morgan*, the appellate court viewed the similarly situated inquiry as requiring a heightened similarity of "job requirements and ... pay provisions." *Dybach*, 942 F.2d at 1567-68; *see also Morgan*, 551 F.3d at 1262.

Unlike *Dybach* and *Morgan*, the FLSA's applicability is not at issue in the Joneses' suit, and they therefore need only "mak[e] a modest factual showing" to satisfy the "similarly situated" requirement.  *Lovett's Buffet*, 185 F.R.D. at 365 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)).  Here, the Joneses are alleging that ASK violated the FLSA as a direct result of its "off-the-clock work requirements and overtime compensation deficiencies," which, they contend, "were common pay practices applicable to every Agent," Pl. Br. (Doc. 27) at 14;

12

thus, the Joneses argue that all hourly, non-exempt ASK customer service representatives qualify as similarly situated in relation to this suit.

The court agrees that, at this stage, the Joneses are sufficiently similarly situated to the proposed plaintiff-class members such that conditional certification of this § 216(b)-collective action is warranted. They have submitted four declarations, from themselves and two other ASK agents, all attesting that ASK had a uniform practice of not compensating its agents for pre-shift, mid-shift, and overtime work. *Contrast Reed v. Mobile Cnty. Sch. Sys.*, 246 F. Supp. 2d 1227, 1236 (S.D. Ala. 2003) (Butler, C.J.) (finding insufficient evidence of a pattern or practice where plaintiffs "produced no affidavits from employees identifying any allegedly unlawful practice"). The declarations show that the agents were subject to the same log-in procedures and quality-control measures regardless of whether they worked from home or in the

13

Montgomery call center.  The court finds that these declarations provide a reasonable basis for concluding that the violations plaintiffs allege were widespread and "stem from some ... formal or informal policy or practice." *Barron v. Henry Cnty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1104 (M.D. Ala. 2003) (Albritton, C.J.).

ASK does not contest that its agents needed to be phone ready at the start of their shifts but instead attacks the credibility of the declarations, which ASK believes are essentially copied and pasted from a lawsuit against a different defendant.  ASK submits that the agents' description of the steps they took to get phone ready "is merely borrowed from another case and is not an accurate representation of ASK's process."  Def. Br. (Doc. 33) at 22.  For example, ASK claims its log-in procedures are significantly more streamlined than the agents suggest, that ASK does not use certain computer programs mentioned in the declarations, and that the agents misstate the length of their meal breaks, their

dates of employment, and their rates of hourly compensation. Given these discrepancies, ASK contends, trying the agents' claims collectively would "require individualized proof 1) that their time and payroll records are [accurate]; 2) that they personally performed off-the-clock work contrary to ASK's policy against it, and when and how much; and 3) that ASK was aware of the off-the-clock work in each alleged instance." *Id.* at 2. ASK thus requests that the court find the members of the potentially plaintiff class insufficiently similar for conditional certification and notice.

However, a motion for conditional certification is not the appropriate vehicle for a decision on the merits. *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1240-41 (S.D. Ala. 2008) (Steele, J.) ("To the extent that Defendant would now argue the merits of the case, such debates are premature and inappropriate."). While ASK's assertions hint that individual issues may eventually dominate this collective action, it is not clear at this

15

early stage that the individual factors go to liability, rather than damages. *See White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1318 (M.D. Ala. 2002) (Albritton, C.J.). As the court cannot agree with the company's assertions without rendering judgment on the merits, these contentions are better raised at a later stage. *See also Morgan*, 551 F.3d at 1261 (discussing the decertification stage and explaining that as "more legally significant differences appear amongst the opt-ins, the less likely it is that the group of employees is similarly situated").

## B. <u>Desire of Others to Opt-In</u>

Before conditionally certifying the class for notice purposes, this court must assure itself that there are others who "desire to 'opt-in'" to the Joneses' action. *Dybach*, 942 F.2d at 1567.

As discussed, four former ASK agents have filed consents to opt into this action. The consents are proof

that at least four former agents wish to join a suit against ASK to recover for unpaid pre-shift, mid-shift, and overtime work.  *See* Consents (Doc. 1-1, Doc. 1-2, Doc. 14-1, and Doc. 15-1).  Furthermore, all declarants states their belief that, if more of their co-workers learned of the suit, they would join as well.  The court finds this sufficient evidence that others desire to opt into the suit that the *Joneses* have initiated.

The court will therefore conditionally certify a class of all non-FLSA-exempt, hourly wage agents who worked for ASK within the three years preceding the filing of the complaint in this case.[3]

---

3. The three-year statute of limitations applies to actions brought under the FLSA for willful violations of the statute.  *See* 29 U.S.C. § 255(a).  Otherwise, suits for FLSA violations must be brought within two years. *See id.*  To qualify as a willful violation, the employer must have known its conduct was prohibited by the FLSA or else shown reckless disregard for the possibility that the conduct violated the FLSA.  *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  ASK does not argue that a two-year statute of limitations should apply to the conditionally certified class.  Furthermore, the *Joneses* and the potential opt-in plaintiffs state that they submitted requests for compensation to their

***

Accordingly, it is ORDERED as follows:

(1) Plaintiffs Natasha Jones and Jonessa Jones's motion for conditional class certification (Doc. 26) is granted.

(2) The court conditionally certifies a collective consisting of hourly customer-service representatives who worked for defendant ASK Telemarketing, Inc. either remotely from somewhere within the United States or in defendant ASK Telemarketing, Inc.'s Montgomery, Alabama, call center at any time during the three years preceding the initiation of this suit.

(3) The parties are to submit, within 14 days from the date of this order, a joint proposal to the court for providing the requested notice of this collective action to similarly situated persons. If the parties cannot agree on the notice procedure, the joint proposal should

---

supervisors and yet the contested practices continued. At this preliminary stage, the court will thus allow notice to proceed on behalf of the three-year class.

18

include each side's suggested procedure, with an explanation from each side as to why its suggested procedure is better than the other procedure.

(4) The Jones plaintiffs' motion for a status hearing (Doc. 36) is denied as moot.

DONE, this the 29th day of September, 2023.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE